## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

--------------------------------------------------------x

**JOSEPH ROZWOOD**, individually and on behalf of all similarly situated individuals,

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff,

-against

Civil Action No:

**ADP INC.,**

**Jury Trial Demanded**

Defendant.

--------------------------------------------------------x

Plaintiff, JOSEPH ROZWOOD ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendant, ADP, INC. ("Defendant" or "ADP"), individually and on behalf of all similarly situated individuals and states as follows:

## INTRODUCTION

1.     This is a class and collective action brought by Plaintiff on his own behalf and on behalf of all similarly situated current and/or former Customer Service Representative employees ("CSRs") of Defendant to recover for Defendant's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the New York Payment of Wages Act ("NYPOW"), N.Y. Lab. Law §§ 190, *et seq*., the New York Minimum Wage Age ("NYMWA"), N.Y. Lab. Law §§ 650, *et seq*., the New York Code of Rules and Regulations ("NY Code"), 12 N.Y.C.R.R. §§ 142, *et seq*. ("NYCRR") (the NYPOW, the NYMWA, the NY Code, collectively, "New York wage and hour laws"), alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's various call center locations, are homogenous and issued guidance

1

to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit 1, at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.")  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift job-related activities must be kept."  *Id*.

3.      Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.      Plaintiff seeks a declaration that his rights, and the rights of the putative FLSA Collective Class and the putative Rule 23 Class, were violated; and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq*.

6.      This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      Upon information and belief, Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.

8.      Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to, utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

9.      This Court has supplemental jurisdiction over the New York state law wage and hour class pursuant to 28 U.S.C. § 1367 because all New York state law wage and hour claims are so related to the federal claims that "they form part of the same case or controversy" such that they should be adjudicated in one judicial proceeding.

10.     This Court has personal jurisdiction over Defendant because it does business within this District in the State of New Jersey.

**PARTIES**

11.     Plaintiff, JOSEPH ROZWOOD, is an individual who resides in the County of Erie, City of Orchard Park, New York.

12.     Plaintiff was employed by Defendant as an hourly employee from approximately October 2009 through August 2017 as a Customer Service Representative.

13.     Plaintiff's most recent hourly rate was $20.50.

14.     Plaintiff regularly worked in excess of forty (40) hours per workweek.

15.     Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and his Consent to Sue is attached hereto as Exhibit 2.

16.     Defendant ADP INC., is one of the largest payroll companies in the United States serving over 700,000 clients.[1]

---

[1] https://www.adp.com/ (last visited June 11, 2019).

17.     Defendant is incorporated in Delaware, with its principal place of business located at 1 ADP Blvd, Roseland, NJ, 07068. Defendant can be served through its Registered Agent, NATIONAL REGISTERED AGENTS, INC., 100 Canal Pointe Blvd, Princeton, NJ 08540.

## GENERAL ALLEGATIONS

18.     The fundamental protections afforded by the FLSA and the New York wage and hour law include payment of premium overtime wages for all hours worked above forty (40) hours per week.

19.     Plaintiff and the other similarly situated individuals were, or are, employed by Defendant as hourly CSRs or other job titles performing similar job duties.

20.     Plaintiff was employed by Defendant as an hourly CSR employee from October 2009 until approximately August 2017.

21.     As a CSR, Defendant assigned Plaintiff to answer customer calls for Defendant's clients.

22.     Plaintiff's primary job duties included, but were not limited to, answering questions from callers, obtaining basic profile information, troubleshooting payroll questions, canceling auto-payments, and discussing services offered by Defendant.

23.     Defendant provided substantial training and materials to instruct Plaintiff how to carry out his primary job duties.

24.     Throughout Plaintiff's employments with Defendant, he regularly worked at least 40 hours per workweek.

25.     Regardless of whether Plaintiff was scheduled to work a workweek totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to work a workweek totaling in excess of 40 hours, Plaintiff was regularly required to work a substantial amount of time

off-the-clock as part of his CSR job duties. Plaintiff was never compensated for this time worked off-the-clock.

26.     29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

27.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

*Pre-Shift Off-the-Clock Work*

28.     Plaintiff was tasked with providing Defendant's clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

29.     Defendant required Plaintiff, and all other current and/or former hourly CSRs, to arrive at the call center before their scheduled shifts to boot up their computers, launch and log into necessary programs, servers, and applications, and log into Defendant's phone systems to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly takes 10 minutes per shift, or even as much as 30 minutes or more if technical issues arise. Only after this process was completed was Plaintiff allowed to clock-in to Defendant's timekeeping system at the scheduled start of their shifts.

30.     The pre-shift boot-up procedure was integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

31.     The unpaid pre-shift off-the-clock work performed by Plaintiff, and all other current

and/or former hourly CSRs, directly benefits Defendants.

***Defendant's Policy and Practice of Off-the-Clock Work Violated Federal and State Laws.***

32.     At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former hourly CSRs, to routinely perform off-the-clock pre-shift work by not allowing its employees to clock-in until *after* the pre-shift procedure was complete. Defendant would not allow Plaintiff, and all other current and/or former hourly CSRs, to clock into the time keeping system through Defendant's system until their scheduled shift start time.

33.     Defendant knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221.

34.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in any amount.

35.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires it to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable off-the-clock pre-shift work performed.

36.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

37.     Defendant knew or should have known that New York wage and hour laws require an employer to pay employees wages "for *each hour* worked." *See* N.Y. Lab. Law § 652 (emphasis added); 12 N.Y.C.R.R. § 142-2.1; *id*. at § 142-2.9.

38.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs working in Defendant's New York location, for their off-the-clock pre-shift compensable work performed in workweeks totaling less than 40 hours and in workweeks totaling in

excess of 40 hours at the proper legal rates, including overtime premiums, in violation of the New York wage and hour laws.

39.     In reckless disregard of the FLSA and New York wage and hour laws, Defendant adopted and then adhered to its policy, plan or practice of employing Plaintiff, and all other current and/or former hourly CSRs, to perform pre-shift compensable work off-the-clock. This illegal policy, plan or practice resulted in Plaintiff, and all other current and/or former hourly CSRs, not being paid correctly for all straight time and overtime worked in violation of the and the New York wage and hour laws and the FLSA.

***Recordkeeping.***

40.     29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

41.     The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

42.     Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

43.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be

only approximate.

44.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on his own behalf and on behalf of:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by ADP, INC., at any time during the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

46.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

47.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-

half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

48.     Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of Court-supervised notice of this action and the opportunity to join it. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

49.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether he is entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.


**THE NEW YORK WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4) on behalf of a putative Class defined to include:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by ADP, INC., in New York at any time in the last six years.*

(hereinafter referred to as the "New York Class"). Plaintiff reserves the right to amend this definition as necessary.

51.     *Numerosity*: The members of the New York Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

52.     *Commonality/Predominance*: There is a well-defined community of interest among New York Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a.   Whether the pre-shift off-the-clock time the New York Class members spend on boot-up and log-in activities each shift is compensable under the NYMWA and the NY Code;

   b.   Whether Defendant violated the NYPOW, NYMWA, and the NY Code through their pay practices;

   c.   Whether Defendant's violations of the NYPOW, NYMWA, and the NY Code were willful;

   d.   Whether Defendant violated the NY Code by failing to make, keep, and preserve true and accurate payroll records;

   e.   Whether Defendant should be required to pay unpaid wages, overtime premiums, compensatory damages, liquidated damages, attorneys' fees and costs, and pre-and post-judgment interest for violating the NYPOW, NYMWA, and the NY Code.

53.     *Typicality*: Plaintiff's claims are typical of those of the New York Class in that all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other New York Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other New Work Class members: whether all New York Class

members were employed by Defendant on an hourly basis without receiving compensation for "off-the-clock" wages owed for that work.

54.     *Adequacy*: Plaintiff will fully and adequately protect the interests of the New York Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel has interests that are contrary to, or conflicting with, the interests of the New York Class.

55.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the New York Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

56.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the New York Class within that group a separate opt-out notice pertaining to their rights under the New York state law. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are

satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue him claim as a class action").

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[2]

57.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4), on behalf of a putative Class defined to include:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by ADP, INC., at any time during the last six years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiff reserves the right to amend this definition as necessary.

58.     *Numerosity*: The members of the Nationwide Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

59.     *Commonality/Predominance*: There is a well-defined community of interest among Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

> a.   Whether Defendant offered to pay Plaintiff and the Nationwide Class certain rates (depending on the technical job titles) per hour for each hour worked as CSRs;
>
> b.   Whether Plaintiff and the Nationwide Class accepted Defendant's offer by performing the essential functions of the job;

---

[2] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its CSRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's quasi-contractual claims (Count IV).

    c.  Whether Defendant breached the contract by failing to pay Plaintiff and the Nationwide Class for each and every hour worked; and

    d.  Whether Plaintiff and the Nationwide Class were damaged.

60.   *Typicality*: Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether the Nationwide Class members were employed under an implied contract to be paid for each and every hour worked by Defendants.

61.   *Adequacy*: Plaintiff will fully and adequately protect the interests of the Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

62.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the

efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

63.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

## COUNT I

### (Collective Action)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

64.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

65.     At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*

66.     Defendant is engaged in interstate commerce or the production of goods for commerce, as defined by the FLSA.

67.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

68.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of

goods for commerce.

69.    The position of Customer Service Representative is not exempt from the FLSA.

70.    Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

71.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

72.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

73.    Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

74.    Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

75.    Defendant's violations of the FLSA were knowing and willful.

76.    By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated hourly CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to current and former hourly CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

77.    None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

78.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or his unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### (Class Action)
### VIOLATIONS OF NEW YORK WAGE AND HOUR LAWS
### FAILURE TO PAY MINIMUM WAGES AND OVERTIME PREMIUMS

79.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

80.    At all times relevant to this action, Defendant was an "employer" under the NYPOW, subject to the wage payment provisions of the NYPOW. *See* N.Y. Lab. Law § 190.3.

81.    At all times relevant to this action, Defendant was an "employer" covered by the minimum wage and overtime mandates of the NYMWA and the NY Code, and Plaintiff and the New York Class are all "employee[s]" entitled to the NYMWA's and the NY Code's protections. *See* N.Y. Lab. Law §§ 651.5-651.6 and 652; *see also* 12 N.Y.C.R.R. §§ 142-2.1, 142-2.9, and 142-2.14(a).

82.    At all times relevant to this action, Plaintiff and the New York Class are all "employee[s]" and Defendant was an "employer" under the NYPOW and subject to the wage payment provisions of the NYPOW. *See* N.Y. Lab. Law § 190.1-190.2.

83.    At all relevant times, Defendant suffered, permitted, and/or required Plaintiff and all New York Class members to work necessary pre-shift boot up activities without being paid a minimum wage or overtime pay as required by New York wage and hour laws.

84.    The New York wage and hour laws entitles employees to certain hourly minimum wages and overtime wages of not less than one and one-half times the regular rate of pay of the employee for all hours worked and mandates that employers must pay all wages due not less frequently

than semi-monthly. *See* N.Y. Lab. Law § 652; 12 N.Y.C.R.R. §§ 142-2.1, 142-2.9; N.Y. Lab. Law § 191.1.

85.     Defendant violated New York wage and hour laws by regularly and repeatedly failing to compensate Plaintiff and the New York Class for the time spent on necessary pre-shift boot up activities as alleged throughout this Complaint.

86.     In workweeks where Plaintiff worked over 40 hours not including pre-shift boot up activities, Defendant was required to pay Plaintiff not less than one and one-half times the regular rate of pay. However, Defendant did not pay Plaintiff for any pre-shift boot up activities.

87.     In workweeks where Plaintiff worked under 40 hours not including pre-shift boot up activities, Defendant was required to pay Plaintiff his regular wage rate. However, Defendant did not pay Plaintiff for any pre-shift boot up activities.

88.     Regardless of how many hours Plaintiff and all New York Class members worked, Defendant refused to pay for any pre-shift boot up activities.

89.     As a result of the unlawful acts of Defendant, Plaintiff and all New York Class members were deprived of their rightfully earned minimum wages and overtime pay in amounts to be determined at trial.

90.     The NYMWA entitles employees to bring a private action against an employer within six years to recover "the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due." *See* N.Y. Lab. Law §§ 663.1 and 663.3.

91.     The New York wage and hour laws require "[e]very employer" to "establish, maintain

and preserve for not less than six years . . . the number of hours worked daily and weekly." 12 N.Y.C.R.R. § 142-2.6.

92.     Defendant failed to establish, maintain, and preserve true and accurate records of all hours worked by Plaintiff and the New York Class by failing to account for necessary pre-shift boot up activities.

93.     None of the provisions of the New York wage and hour laws can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

94.     As a result of the foregoing conduct, Plaintiff seeks on behalf of himself and all members of the New York Class, unpaid wages at the required legal rate, including but not limited to the legal overtime premium for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## COUNT III

**(National Breach of Contract Class Action)**
**BREACH OF CONTRACT**

95.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

96.     At the times Plaintiff and the Nationwide Class were hired by Defendant, Defendant offered to pay Plaintiff and the Nationwide Class certain rates per hour for each hour worked as a

CSR. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepare as part of their regular business activities.

97.     Plaintiff and the Nationwide Class accepted the offer and worked for Defendant as CSRs.

98.     Plaintiff and the Nationwide Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

99.     Plaintiff's work, and the work of the Nationwide Class, required pre-shift boot up time.

100.     Plaintiff and every other Nationwide Class member performed under their contract by doing their jobs in addition to carrying out the pre-shift activities that Defendant required.

101.     Upon information and belief, Defendant does not allow its employees to clock in to begin being compensated until after the pre-shift boot up procedures are complete.

102.     Despite being required to complete these pre-shift job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their pre-shift work performed in workweeks in which they worked 40 hours or less.

103.     By failing to pay Plaintiff and the Nationwide Class for the pre-shift boot up time, Defendant breached its contract with Plaintiff and the Nationwide Class to pay their hourly rate for each hour worked.

104.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Nationwide Class members spent doing pre-shift activities, which is a fundamental part of an employer's job.

105.     In sum, the facts set forth above establish the following elements and terms of the contract:

    a.      Offer: a set hourly rate for each hour worked as a CSR;

    b.      Acceptance: Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendants);

    c.      Breach: Defendant did not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and,

    d.      Damages: By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be proven at trial.

106.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

107.    As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Class were damaged at an amount to be proven at trial.

**COUNT IV**

**QUASI-CONTRACTUAL REMEDIES**
**UNJUST ENRICHMENT**

108.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

109.    Upon information and belief, Plaintiff's and every other Nationwide Class members' pre-shift boot up time provided valuable work and income for Defendant; namely, compensation to Defendant for completing customer service activity that directly benefited Defendant.

110.    *Pre-Shift Boot up Time*: Plaintiff and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Nationwide Class worked off-the-clock before their shift began. Without the pre-shift boot-up time, Plaintiff and the Nationwide Class were unable to take customer calls at their

20

designated start time. Further, upon information and belief, Defendant does not allow their employees to clock in to begin being compensated until after the pre-shift procedures are complete.

111.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary pre-shift boot up activities, Defendant has been unjustly enriched at the expense of Plaintiff and the Nationwide Class in an amount to be determined at trial.

112.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary activities, Defendant also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

113.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

114.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

115.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Nationwide Class were harmed at an amount to be proven at trial.

**WHEREFORE**, Plaintiff requests the following relief:

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs request the following relief:

A.  An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

B.  An Order certifying this action as a class action for the Rule 23 New York Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.  An Order certifying this action as a class action for the Rule 23 Breach of Contract Nationwide Class (or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

E. An Order designating the Named-Plaintiff to act as the Nationwide Class Representative on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

F. An Order designating Plaintiff to act as the Class Representative on behalf of all similarly situated individuals for the Rule 23 New York Class;

G. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

H. An Order declaring that Defendant violated its obligations under the FLSA;

I. An Order declaring that Defendant willfully violated the NYPOW, the NYMWA, the NY Code and their attendant regulations as set forth above;

J. An Order declaring that Defendant violated its obligations under the NYPOW, the NYMWA, and the NY Code;

K. An Order granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of 40 hours per week for the past three years for the FLSA Class and for the past six years for the New York Class;

L. An Order awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid overtime found owing to Plaintiffs under the FLSA;

M. An Order granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid regular wages owed calculated at Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked off-the-clock up to 40 hours per week for the past six years for the New York Class;

N. An Order awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid straight time found owing to Plaintiffs under the NYPOW, the NYMWA, the NY Code;

O. An Order awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

P. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

Q.  An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: June 14, 2019                              Respectfully submitted,


Thomas Anapol, Esq.
ANAPOL WEISS
1040 N. Kings Highway, Suite 304
Cherry Hill, NJ 08034
Telephone: 215-735-1130
Fax: 215-875-7707
tanapol@anapolweiss.com

*Attorney for Plaintiff*